# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK
### MANHATTAN DIVISION

YIELDMO, INC.,

        Plaintiff,

      v.

TEADS SA; and
TEADS, INC.,

        Defendants.

Case No. 1:25-cv-737

JURY TRIAL DEMANDED

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Yieldmo, Inc. ("Yieldmo" or "Plaintiff") files this complaint for patent infringement against Teads, Inc. and Teads SA (collectively, "Teads" or "Defendants") for damages and attorneys' fees and in support thereof alleges and avers as follows:

### NATURE OF THE ACTION

1.      This is a civil action arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including specifically 35 U.S.C. § 271, based on Teads's infringement of U.S. Patent Nos. 10,832,729 (the "'729 Patent"), 10,832,730 (the "'730 Patent"), and 11,604,918 (the "'918 Patent") (collectively "the Patents-in-Suit").

### THE PARTIES

2.      Plaintiff Yieldmo, Inc. is a Delaware company with an office at 1 Tara Boulevard, Suite 200, Nashua, New Hampshire 03062.

3.      Defendant Teads, Inc. is a corporation established under the laws of the State of Delaware, with a principal place of business at 55 5th Avenue, 17th Floor, New York, New York 10003. On information and belief, it is a wholly-owned subsidiary of Teads SA. Teads, Inc.'s

registered agent for service of process is Corporation Service Company, located at 80 State Street, Albany, New York 12207.

4.      The parent of Teads, Inc., Teads SA, is a Luxembourg company with a principal place of business at 5 rue de la Boucherie, L12 17 Luxembourg. On information and belief, Teads SA can be served with process at that address.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the claims herein arise under the patent laws of the United States, 35 U.S.C. § 1 *et seq*., including 35 U.S.C. § 271.

6.      This Court has personal jurisdiction over each of the Defendants in this action because they conduct business in and have availed themselves of the laws of the state of New York.  For example, Defendants have through their own acts and/or through the acts of their affiliates offered for sale, sold, and or imported (either themselves or through affiliates or intermediaries) advertising-support services within the State of New York and within this district through, for example, the using, making, offering to sell, selling, and/or importing the Teads Cinemagraph, Teads Flow, Teads inRead Video, and Teads Scrolling 3D Cube advertisement formats ("Accused Products/Services"), through regular distribution channels, including the Internet, knowing that such services would be used, made, offered for sale, sold, and/or imported in New York, including the Southern District of New York, and, in the alternative, the taking actions in the Southern District of New York to induce others to commit acts of infringement. At least by offering these products/services into the stream of commerce, including into this district, the Defendants have sufficient minimum contacts with the Southern District of New York, making them amenable to suit in the Southern District of New York.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Venue is proper because Teads, Inc. has committed and continues to commit acts of patent infringement in this district, including making, using, offering to sell, selling, and/or importing Accused Products/Services in this district, including by Internet sales, and/or committing at least a portion of any other infringements alleged herein in this district.

8.      Teads, Inc. targets its advertisements to residents of this district.

9.      Teads, Inc. has a regular and established place of business in this district at 55 5th Avenue, 17th Floor, New York, New York 10003, which is its headquarters.

10.     Venue is proper as to Defendant Teads SA, which is organized under the laws of Luxembourg. 28 U.S.C. § 1391(c)(3) provides that "a defendant not resident in the United States maybe sued in any judicial district."

## PATENTS IN SUIT

11.     On November 10, 2020, U.S. Patent No. 10,832,729 entitled "Methods for Serving Interactive Content to a User," was duly and legally issued by the United States Patent and Trademark Office. A true and accurate copy of the '729 Patent is attached hereto as Exhibit A.

12.     On November 10, 2020, U.S. Patent No. 10,832,730 entitled "Methods for Serving Interactive Content to a User," was duly and legally issued by the United States Patent and Trademark Office. A true and accurate copy of the '730 Patent is attached hereto as Exhibit B.

13.     On March 14, 2023, U.S. Patent No. 11,604,918 entitled "Methods for Serving Interactive Content to a User," was duly and legally issued by the United States Patent and Trademark Office. A true and accurate copy of the '918 Patent is attached hereto as Exhibit C.

14. Yieldmo is the owner by assignment of all rights, title, and interest in the Patents-in-Suit.

## YIELDMO'S LEGACY AS AN ONLINE ADVERTISING INNOVATOR

15. Yieldmo was incorporated in Delaware in 2012 by Michael Yavonditte, Rick Eaton, Farid Jawde, and John Coleman.

16. For years, Yieldmo pioneered engaging digital advertising formats. Yieldmo formats, particularly, but not exclusively, pertain to serving mobile advertisements within one or more visual elements (such as inline frames or "iframes") on a webpage and respond to activity on the webpage on which the advertisement is being served.

17. These nested visual elements allow other content to be independently displayed within a webpage.

18. Conventional nested visual elements provide content from a third party for display on a webpage independent of the content or activity on that webpage. For example, a digital advertisement presented in a conventional nested visual element may contain rich media like video or animation, but does not depend on user activity on the page to affect the way the user engages with the media. In a conventional nested visual element, a consumer must elect to interact with the nested visual element content for the content to interact with the consumer.

19. Yieldmo's innovations enable a nested visual element that allows the content to interact with the webpage on which it is embedded and enables the content to perform one or more functions based on activity performed on the webpage. Yieldmo's innovations further provide its novel nested-visual-elements solution on mobile devices.

20. The asserted claims of the Patents-in-Suit discussed below provide specific technological solutions that address technological shortcomings that were present in the field of

digital advertising at the time of the invention in a manner that is neither abstract nor comprising routine, well-understood, or conventional steps.

21.     US Provisional Application No. 62/068,646 (the "'646 Application")—which the Patents-in-Suit claim priority to and fully incorporate by reference—describes several deficiencies present in then-available technologies. '646 Application [0003]-[0004], attached as Exhibit D.

22.     The '646 Application explains that a nested visual element, such as an iframe, is a "HyperText Markup Language (HTML) document [inserted] within another HTML document," such as a webpage. *Id.* [0002].

23.     At the time of invention, such nested visual elements suffered from technological limitations. For example, the content contained within a nested visual element could not easily respond to viewer activity on the webpage itself. *Id.* [0003]. This was because conventional nested visual elements were not capable of receiving information from the webpage that it was inserted within. *See id.* [0015]. These technological limitations are particularly problematic in the field of digital advertising. As the '646 Application explains, "[c]onventional iframes provide content from a third party to be displayed on a webpage, independent of the content activity on that webpage. An example of this is in the ad tech industry, where media (e.g., images and text) fill the iframe on a webpage. The media, even if it may be rich media like video or animation, does not access user activity on the page to affect the way the user engages with the media. As a result, a consumer must elect to interact with the iframe content for the content to interact with the consumer. *Id.* [0003]."

24.     One benefit of these claimed technologies is that a visual element (such as an inline frame or "iframe") can "link [digital advertising content] content shown within [itself] at

any given time" to its own position within an electronic document (such as a web page or mobile application). *Id.* at 3:24-27; 5:1-3. That sort of interactivity was not feasible in the field of online digital advertising until Yieldmo's patented innovations.

25.     When those patented innovations are employed, the visual element can "cycle through" frames of a digital advertisement "according to schema imitating play, pause, seek forward, and seek backward functions [that are] tied to changes to the position of the visual element . . . during scroll events . . . ." *Id.* at 4:7-12. This is desirable for a variety of reasons. For example, such advertisements are more visually and physically engaging to viewers. *Id.* at 4:13-30.

26.     The visual element can also track user interactions (such as a scroll up, scroll down, etc.) that can serve as a basis for advanced advertisement engagement metrics. *Id.* at 4:31-40.

## BACKGROUND ON TEADS'S AD TECHNOLOGIES AND PLATFORM

27.     Teads provides an advertising platform that serves interactive digital advertisements (including the Accused Products/Services described below) to an ad publisher's (a "Teads Publisher") web page or app. https://medium.com/teads-engineering/displaying-billions-of-ads-per-week-on-the-open-web-8e05ed4ef387. Teads's advertising technology (namely the "Teads Format Framework Technology") is employed to serve these interactive digital advertisements (which include the Accused Products/Services described below). *Id.*

28.     According to Teads, the Teads Format Framework Technology "does not contain any third-party libraries" and "any given piece of code [within] is 100% produced in-house and tested by Teads engineers." *Id.*

29.     A visual element (the "Teads iFrame") contains the Teads Format Framework

Technology. The Teads Format Framework Technology includes an ad tag (the "Teads Format Tag"), scripts (the "Teads Format Scripts"), and an ad player (such as the "Teads Image Player."). *Id.* The Teads iFrame (and the Teads Format Framework Technology contained within) are inserted and integrated into Teads Publisher's web pages or apps. *Id.*

30.     Teads requires prospective Teads Publishers to undergo a registration process. https://support.teads.tv/support/solutions/articles/36000314779. Otherwise, the prospective Teads Publishers cannot obtain a Teads Publisher ID number and thus cannot serve Teads's interactive digital advertisements on their websites. https://support.teads.tv/support/solutions/articles/36000314739.

31.     Teads controls the registration process, during which it vets the prospective Teads Publisher. https://www.teads.com/brand-safety-policy/. Teads also imposes "strict terms and conditions" on the prospective Teads Publisher. *Id.* Teads decides whether to approve or reject a prospective Teads Publishers. *Id.*

32.     On information and belief, Teads Publishers are contractually obligated to insert, integrate, and employ Teads's advertising technologies (including the Teads iFrame and Teads Format Framework Technology) in order to employ Teads's interactive digital advertisements. https://privacy-policy.teads.com/ ("Publishers use Teads' technology to monetize their ad spaces."). Teads contractually obligates Teads Publishers (or "Advertisers") to insert, integrate, and employ some of Teads's advertising technologies (such the Teads Format Tag). https://www.teads.com/terms/en_US/2022/06/16/EN_Teads_AdManager_TCs_DPA_Update_Jan 2022_Online_version_FINAL.pdf ("Advertiser acknowledges and accepts that Teads may place or ensure the placement of tracking technologies on the Advertiser Property(ies) . . . .") (pg. 9). On information and belief, Teads Publishers can only access and employ Teads's ad serving

technology (such as the Teads iFrame and Teads Format Framework Technology) upon entry of a publisher partnership agreement. https://www.teads.com/teads-announces-exclusive-partnership-with-nexstar/ ("[Teads] also offers . . . publishers cutting-edge creative technology at scale . . . ."); https://www.teads.com/attitude-signs-exclusive-deal-with-teads/ ("This partnership will . . . allow[] the publisher to leverage Teads' full-funnel suite of bespoke ad formats.").

33.    On information and belief, Teads, through these contracts or agreements, has the power to terminate an entity's status as a Teads Publisher or withhold a Teads Publisher's access to the Teads Format Framework Technology and Teads's interactive digital advertisements.

34.    Teads directs and instructs Teads Publishers to insert, integrate, and use the Teads Format Framework Technology to serve Teads's advertisements.

https://support.teads.tv/support/home;

https://support.teads.tv/support/solutions/articles/36000019056-integrating-teads-formats-without-an-ad-server-direct-integration-;

https://support.teads.tv/support/solutions/articles/36000314785; https://medium.com/teads-engineering/displaying-billions-of-ads-per-week-on-the-open-web-8e05ed4ef387;

https://support.teads.tv/support/solutions/articles/36000314779;

https://github.com/teads/TeadsSDK-iOS;

https://support.teads.tv/support/solutions/articles/36000315194-getting-started.

35.    Teads performs testing that validates whether the Teads Format Framework Technology is integrated properly.

https://support.teads.tv/support/solutions/articles/36000314779.

36.    Teads provides Teads Publishers with account managers.

https://support.teads.tv/support/solutions/articles/36000314779;

https://support.teads.tv/support/solutions/articles/36000314739.

37.    On information and belief, Teads requires Teads Publishers to only serve interactive digital advertisements Teads Publisher's that comply with Teads's technical and design specifications. https://files.disneyadvertising.com/MediaKit/ESPN/espn_display-scroller.pdf; https://s3-eu-west-1.amazonaws.com/teads-helpcenter-assets.production.eu-west-1/Teads_Studio_Format_Requirements/Teads_Studio_Formats.pdf; https://www.espn.com/adspecs/INTL-en/espn/outstream-video.html.

38.    Teads Publishers benefit from inserting, integrating, and employing Teads's advertising technologies (including the Teads iFrame and Teads Format Framework Technology) as required and directed by Teads. This includes the receipt of monetary benefits. https://privacy-policy.teads.com/ ("Publishers use Teads' technology to monetize their ad spaces."); https://www.teads.com/teads-announces-exclusive-partnership-with-nexstar/ ("Teads technology creates a sustainable revenue stream for us by monetizing our media properties with high-quality ads without sacrificing the user experience."); https://www.teads.com/attitude-signs-exclusive-deal-with-teads/ ("We are hugely excited to sign this partnership with Teads . . . It's important for us to build sustainable revenue models . . . and working with Teads enables this."); https://support.teads.tv/support/solutions/articles/36000314779 ("To register with Teads and monetize your app, please contact your local account manager."); https://support.teads.tv/support/solutions/articles/36000314739 ("Not listing Teads in your app-ads.txt will directly impact ad serving buying and revenue you can get from us.").

39.    On information and belief, Teads has the power to withhold payment to a Teads Publisher that fails to insert, integrate, and employ Teads's advertising technologies (including the Teads iFrame and Teads Format Framework Technology) as required and directed by Teads.

40.     Teads Publisher also benefit by having the ability to offer interactive and unobtrusive ad experiences on their web pages or apps. https://www.teads.com/ ("We engage users with highly interactive and innovative ad experiences."); https://www.teads.com/teads-announces-exclusive-partnership-with-nexstar/ ("Teads' inRead ads will empower our Local and National Sales teams with a performance driven video-first solution that strengthens our suite of video ads. Teads technology [offers] high-quality ads without sacrificing the user experience."); https://www.teads.com/attitude-signs-exclusive-deal-with-teads/ ("We are hugely excited to sign this partnership with Teads, which will not only allow us to deliver quality, brand-safe video advertising across our web and mobile platforms . . . without impacting on the user experience or sacrificing the quality of our website . . . working with Teads enables this.").

41.     Teads advertises these benefits to Teads Publishers. In doing so, Teads directs and instructs Teads Publishers to display Teads's interactive digital advertisements on their webpages. https://www.teads.com/ ("Unlock incremental revenue from premium advertisers through ad experiences that respect your users."); https://www.teads.com/publishers-showcase/ ("Premium, dynamic, user-friendly formats designed to monetize your ad experience at scale.").

42.     Teads Publishers would not obtain these benefits if they did not insert, integrate, and employ Teads's advertising technologies (including the Teads iFrame and Teads Format Framework Technology) as required and directed by Teads.

## FIRST CAUSE OF ACTION

### (Direct Infringement of the '729 Patent)

43.     Yieldmo incorporates by reference and realleges each and every allegation of Paragraphs 1-42 as if set forth herein.

44.    Yieldmo owns all substantial rights, interest, and title in and to the '729 Patent, including the sole and exclusive right to prosecute this action and enforce the '729 Patent against infringers, and to collect damages for all relevant times.

45.    The '729 Patent generally describes methods for serving interactive advertisements to users. The digital advertising content within a visual element on the web page is responsive to a user's scrolling activity on the webpage containing the visual element. More specifically, different frames of digital advertising content can be rendered based on changes in vertical position that exceed a threshold value.

46.    For example, in claim 1, a first frame in a set of frames is rendered "in response to a first scroll event . . . that moves the image player within the window from an initial vertical position relative the window to a first vertical position within the window . . . ." In other words, a viewer can "play" a digital advertisement by down-swiping a distance that brings the image player into view.

47.    Next, a second frame in the set of frames is rendered as part of an animated transition "in response to a second scroll event . . . that moves the image player within the window **a first distance greater than a threshold distance** from the first vertical position to a second vertical position within the window." (emphasis added).  In other words, a viewer can "seek forward" through a digital advertisement by down-swiping a distance that is greater than a threshold value.

48.    Finally, the first frame in the set of frames is rendered a second time as part of an animated transition "in response to a third scroll event . . . that moves the image player within the **window a second distance greater than the threshold distance**, from the second vertical position to a third vertical position below the second vertical position." (emphasis added). In

other words, a viewer can "seek backward" through a digital advertisement by up-swiping a distance that is greater than a threshold value.

49.    The nested visual element collects characteristics associated with these scroll events. These characteristics are then used to calculate advertisement engagement metrics.

50.    The Accused Products/Services operate in a manner controlled and intended by Teads.

51.    Teads directly infringes infringement of the '729 Patent by using, importing, selling, and/or offering for sale the Accused Products/Services (for example, the Teads Cinemagraph, Teads Flow, Teads inRead Video, and Teads Scrolling 3D Cube advertisement formats).

52.    As set forth in the attached non-limiting claim charts (Exhibit E), Teads has directly infringed and is infringing at least Claims 1, 6, and 9 of the '729 Patent by using, importing, selling, and/or offering for sale the Accused Products/Services.

53.    To the extent that a Teads Publisher is deemed to perform steps, those publishers do so under Teads's direction and control.

54.    First, on information and belief, Teads, through contractual obligations, directs or controls Teads Publishers to insert, integrate, and employ Teads's advertising technologies (including the Teads iFrame and Teads Format Framework Technology) and employ the Accused Products/Services in a manner that requires the Teads Publisher to perform at least one step of the '729 Patent.

55.    Second, Teads conditions a Teads Publisher's participation in an activity or receipt of at least one benefit based upon its performance of at least one step of the '729 Patent. Furthermore, Teads establishes the manner or timing of that performance.

56.     Yieldmo has been damaged as a result of the infringing conduct alleged above. Teads is liable to Yieldmo in an amount that compensates Yieldmo for Teads's infringement, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

57.     In addition, Teads has been aware of the '729 Patent since at least mid-October, 2024, when it received a letter notifying it of its infringement.  Teads's infringement since at least that date, therefore, has been willful and deliberate, entitling Yieldmo to increased damages under 35 U.S.C. § 284.

## SECOND CAUSE OF ACTION

### (Direct Infringement of the '730 Patent)

58.     Yieldmo incorporates by reference and realleges each and every allegation of Paragraphs 1-57 as if set forth herein.

59.     Yieldmo owns all substantial rights, interest, and title in and to the '730 Patent, including the sole and exclusive right to prosecute this action and enforce the '730 Patent against infringers, and to collect damages for all relevant times.

60.     The '730 Patent generally describes methods for serving interactive, non-full-screen advertisements to users. The digital advertising content within the nested visual element is responsive to a user's scrolling activity on the webpage containing the nested visual element. More specifically, each frame of digital advertising content is associated with a range of vertical positions.

61.     For example, in claim 10, a first frame is inserted into an image player "in response to a scroll event that moves the image player to a first vertical position within the window . . . ." This first vertical position is within a "first range of vertical positions . . . ." In other words, a viewer can "play" a digital advertisement by down-swiping to a vertical position

that is within a range of vertical positions associated with the first frame.

62.    Next, the first frame is maintained within the image player "in response to the image playing remaining within [the] first range of vertical positions during the scroll event . . . ." In other words, a viewer can "pause" a digital advertisement by down-swiping to a vertical position that is within the range of vertical positions associated with the first frame.

63.    Finally, a second frame is inserted into the image player "in response to [the] relocation of the image player to a second vertical position," wherein this second vertical positions "fall[s] within a second range of vertical positions outside the first range of vertical positions . . . ." This second frame "succeed[s] the first frame" in the digital advertisement. In other words, a viewer can "seek forward" through a digital advertisement by down-swiping to a vertical position that is associated with the second frame.

64.    The nested visual element collects characteristics associated with these scroll events. These characteristics are then used to calculate advertisement engagement metrics.

65.    The Accused Products/Services operate in a manner controlled and intended by Teads.

66.    Teads directly infringes infringement of the '730 Patent by using, importing, selling, and/or offering for sale the Accused Products/Services (for example, the Teads Cinemagraph, Teads Flow, and Teads inRead Video advertisement formats).

67.    As set forth in the attached non-limiting claim charts (Exhibit F), Teads has directly infringed and is infringing at least Claims 10, 12, 14, and 15 of the '730 Patent by using, importing, selling, and/or offering for sale the Accused Products/Services.

68.    To the extent that a Teads Publisher is deemed to perform steps, those publishers do so under Teads's direction and control.

69.     First, on information and belief, Teads, through contractual obligations, directs or controls Teads Publishers to insert, integrate, and employ Teads's advertising technologies (including the Teads iFrame and Teads Format Framework Technology) and employ the Accused Products/Services in a manner that requires the Teads Publisher to perform at least one step of the '730 Patent.

70.     Second, Teads conditions a Teads Publisher's participation in an activity or receipt of at least one benefit based upon its performance of at least one step of the '730 Patent. Furthermore, Teads establishes the manner or timing of that performance.

71.     Yieldmo has been damaged as a result of the infringing conduct alleged above. Teads is liable to Yieldmo in an amount that compensates Yieldmo for Teads's infringement, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

72.     In addition, Teads has been aware of the '730 Patent since at least mid-October, 2024, when it received a letter notifying it of its infringement.  Teads's infringement since at least that date, therefore, has been willful and deliberate, entitling Yieldmo to increased damages under 35 U.S.C. § 284.

### THIRD CAUSE OF ACTION

### (Direct Infringement of the '918 Patent)

73.     Yieldmo incorporates by reference and realleges each and every allegation of Paragraphs 1-72 as if set forth herein.

74.     Yieldmo owns all substantial rights, interest, and title in and to the '918 Patent, including the sole and exclusive right to prosecute this action and enforce the '918 Patent against infringers, and to collect damages for all relevant times.

75.     The '918 Patent generally describes methods for serving interactive

advertisements to users. These interactive advertisements are comprised of a compiled "set of frames . . . ."

76.     The digital advertising content within the nested visual element is responsive to a user's scrolling activity on the webpage containing the nested visual element. More specifically, each frame of digital advertising content is rendered in accordance with a defined order (e.g., forward or reverse) and at a rate that is proportional to a scroll rate.

77.     For example, in claim 1, a first frame is rendered during a first scroll event that relocates the image player "from an initial position outside the window to a first position within the window." In other words, a viewer can "play" a digital advertisement by down-swiping to a vertical position that brings the image player into the view.

78.     Next, a "first sequence of frames" is rendered during a second scroll event that relocates the image player "to a second position [that is] above the first position within the window . . . ." This first sequence of frames is rendered in the defined "forward order" at a "first rate" that is "proportional" to the rate (or speed) of the second scroll event. In other words, a viewer can "seek forward" through a digital advertisement by down-swiping. In doing so, the frames are rendered at a rate that corresponds to the speed at which the viewer is swiping down.

79.     Finally, a "second sequence of frames" is rendered during a third scroll event that relocates the image player "to a third position [that is] below the second position within the window . . . ." This second sequence of frames is rendered in the defined "reverse order" at a "second rate" that is "proportional" to the rate (or speed) of the third scroll event. In other words, a viewer can "seek backward" through a digital advertisement by up-swiping. In doing so, the frames are rendered at a rate that corresponds to the speed at which the viewer is swiping up.

80.     The Accused Products/Services operate in a manner controlled and intended by

Teads.

81.    Teads directly infringes infringement of the '918 Patent by using, importing, selling, and/or offering for sale the Accused Products/Services (for example, the Teads Cinemagraph, Teads Flow, Teads inRead Video, and Teads Scrolling 3D Cube advertisement formats).

82.    As set forth in the attached non-limiting claim charts (Exhibit G), Teads has directly infringed and is infringing at least Claims 1 and 9 of the '918 Patent by using, importing, selling, and/or offering for sale the Accused Products/Services.

83.    To the extent that a Teads Publisher is deemed to perform steps, those publishers do so under Teads's direction and control.

84.    First, on information and belief, Teads, through contractual obligations, directs or controls Teads Publishers to insert, integrate, and employ Teads's advertising technologies (including the Teads iFrame and Teads Format Framework Technology) and employ the Accused Products/Services in a manner that requires the Teads Publisher to perform at least one step of the '918 Patent.

85.    Second, Teads conditions a Teads Publisher's participation in an activity or receipt of at least one benefit based upon its performance of at least one step of the '918 Patent. Furthermore, Teads establishes the manner or timing of that performance.

86.    Yieldmo has been damaged as a result of the infringing conduct alleged above. Teads is liable to Yieldmo in an amount that compensates Yieldmo for Teads's infringement, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

87.    In addition, Teads has been aware of the '918 Patent since at least mid-October, 2024, when it received a letter notifying it of its infringement.  Teads's infringement since at

least that date, therefore, has been willful and deliberate, entitling Yieldmo to increased damages under 35 U.S.C. § 284.

## FOURTH CAUSE OF ACTION

### (Induced Infringement of the '729 Patent)

88.    Yieldmo incorporates by reference and realleges each and every allegation of Paragraphs 1-87 as if set forth herein.

89.    Yieldmo owns all substantial rights, interest, and title in and to the '729 Patent, including the sole and exclusive right to prosecute this action and enforce the '729 Patent against infringers, and to collect damages for all relevant times.

90.    The '729 Patent generally describes methods for serving interactive advertisements to users. The digital advertising content within the nested visual element is responsive to a user's scrolling activity on the webpage containing the nested visual element. More specifically, different frames of digital advertising content can be rendered based on changes in vertical position that exceed a threshold value.

91.    For example, in claim 1, a first frame in a set of frames is rendered "in response to a first scroll event . . . that moves the image player within the window from an initial vertical position relative the window to a first vertical position within the window . . . ." In other words, a viewer can "play" a digital advertisement by down-swiping a distance that brings the image player into the view.

92.    Next, a second frame in the set of frames is rendered as part of an animated transition "in response to a second scroll event . . . that moves the image player within the window **a first distance greater than a threshold distance** from the first vertical position to a second vertical position within the window." (emphasis added).  In other words, a viewer can

"seek forward" through a digital advertisement by down-swiping a distance that is greater than a threshold value.

93.    Finally, the first frame in the set of frames is rendered a second time as part of an animated transition "in response to a third scroll event . . . that moves the image player within the **window a second distance greater than the threshold distance**, from the second vertical position to a third vertical position below the second vertical position." (emphasis added). In other words, a viewer can "seek backward" through a digital advertisement by up-swiping a distance that is greater than a threshold value.

94.    The nested visual element collects characteristics associated with these scroll events. These characteristics are then used to calculate advertisement engagement metrics.

95.    Teads has been aware of the '729 Patent since at least mid-October, 2024, when it received a letter notifying it of infringement, as well as through service of this complaint.  On information and belief, Teads has had a knowledge of the elements of the claims of the '729 Patent since at least that time and an intent that others satisfy those claim elements and infringe those claims.

96.    Teads induces others to infringe the '729 Patent by importing, selling, and/or offering for sale the Accused Products/Services (for example, the Teads Cinemagraph, Teads Flow, Teads inRead Video, and Teads Scrolling 3D Cube advertisement formats) and instructing third parties on the use of the Accused Products/Services in an infringing manner.   On information and belief, Teads Publishers directly infringe as a result.

97.    As set forth in the attached non-limiting claim charts (Exhibit H), Teads has induced infringement and is inducing infringement at least Claims 1, 6, and 9 of the '729 Patent.

98.    Yieldmo has been damaged as a result of the infringing conduct alleged above.

Teads is liable to Yieldmo in an amount that compensates Yieldmo for Teads's induced infringement, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

99.    In addition, Teads's inducement infringement has been willful and deliberate since at least mid-October, 2024, entitling Yieldmo to increased damages under 35 U.S.C. § 284.

## FIFTH CAUSE OF ACTION

### (Induced Infringement of the '730 Patent)

100.    Yieldmo incorporates by reference and realleges each and every allegation of Paragraphs 1-99 as if set forth herein.

101.    Yieldmo owns all substantial rights, interest, and title in and to the '730 Patent, including the sole and exclusive right to prosecute this action and enforce the '730 Patent against infringers, and to collect damages for all relevant times.

102.    The '730 Patent generally describes methods for serving interactive, non-full screen advertisements to users. The digital advertising content within the nested visual element is responsive to a user's scrolling activity on the webpage containing the nested visual element. More specifically, each frame of digital advertising content is associated with a range of vertical positions.

103.    For example, in claim 10, a first frame is inserted into an image player "in response to a scroll event that moves the image player to a first vertical position within the window . . . ." This first vertical position is within a "first range of vertical positions . . . ." In other words, a viewer can "play" a digital advertisement by down-swiping to a vertical position that is within a range of vertical positions associated with the first frame.

104.    Next, the first frame is maintained within the image player "in response to the image playing remaining within [the] first range of vertical positions during the scroll event . . .

." In other words, a viewer can "pause" a digital advertisement by down-swiping to a vertical position that is within the range of vertical positions associated with the first frame.

105.    Finally, a second frame is inserted into the image player "in response to [the] relocation of the image player to a second vertical position," wherein this second vertical positions "fall[s] within a second range of vertical positions outside the first range of vertical positions . . . ." This second frame "succeed[s] the first frame" in the digital advertisement. In other words, a viewer can "seek forward" through a digital advertisement by down-swiping to a vertical position that is associated with the second frame.

106.    The nested visual element collects characteristics associated with these scroll events. These characteristics are then used to calculate advertisement engagement metrics.

107.    Teads has been aware of the '730 Patent since at least mid-October, 2024, when it received a letter notifying it of infringement, as well as through service of this complaint.  On information and belief, Teads has had a knowledge of the elements of the claims of the '730 Patent since at least that time and an intent that others satisfy those claim elements and infringe those claims.

108.    Teads induces others to infringe the '730 Patent by importing, selling, and/or offering for sale the Accused Products/Services (for example, the Teads Cinemagraph, Teads Flow, and Teads inRead Video advertisement formats) and instructing third parties on the use of the Accused Products/Services in an infringing manner.  On information and belief, Teads Publishers directly infringe as a result.

109.    As set forth in the attached non-limiting claim charts (Exhibit I), Teads has induced infringement and is inducing infringement at least Claims 10, 12, 14, and 15 of the '730 Patent.

110.    Yieldmo has been damaged as a result of the infringing conduct alleged above.

Teads is liable to Yieldmo in an amount that compensates Yieldmo for Teads's induced

infringement, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

111.    In addition, Teads's inducement infringement has been willful and deliberate since

at least mid-October, 2024, entitling Yieldmo to increased damages under 35 U.S.C. § 284.

## JURY DEMAND

112.    Yieldmo hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Yieldmo requests that this Court enter judgment in its favor and

against Defendant as follows:

A.    Adjudging, finding, and declaring that Teads has infringed and continues to

infringe, directly and/or indirectly the '729, '730, and '918 Patents under 35 U.S.C. § 271;

B.    An equitable accounting for determining the profits of and other sums Teads

derived from the complained-of patent infringement.

C.    Awarding past damages arising out of Teads's infringement of the '729, '730, and

'918 Patents to Yieldmo either in Yieldmo's lost profits or in an amount no less than a

reasonable royalty, together with prejudgment and post-judgment interest, in an amount

according to proof;

D.    Awarding attorneys' fees, costs, and/or other damages pursuant to 35 U.S.C. §§

284 or 285 or as otherwise permitted by law;

E.    Adjudging, finding, and declaring that Teads's infringement is willful and

awarding treble damages and fees and costs as a result of that willfulness under 35 U.S.C. § 284;

F.    Entering a permanent injunction pursuant to 35 U.S.C. § 283 enjoining Teads

from infringing the '729, '730, and '918 Patents; and

      G.    Granting Yieldmo such other further relief as is just and proper, or as the Court deems appropriate.


Dated: January 24, 2025                   Respectfully submitted,

                                      /s/ *C. Graham Gerst*

                                      Global IP Law Group, LLC
                                      C. Graham Gerst
                                      (*Pro hac vice* application forthcoming)
                                      Michael Healy
                                      (*Pro hac vice* application forthcoming)
                                      ggerst@giplg.com
                                      mhealy@giplg.com
                                      55 W. Monroe St., Ste. 3400
                                      Chicago, Illinois 60603
                                      (312) 241-1500


                                      *Attorneys for Plaintiff Yieldmo, Inc.*