UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X
                               :

YIELDMO, INC.,                      :

                       Plaintiff,   :              25 Civ. 737 (PAE)

                                :

              -v-              :            OPINION & ORDER

                                :

TEADS, INC., TEADS SA, *and* TEADS SARL,   :

                                :

                      Defendants.   :

                                :
----------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      Plaintiff Yieldmo, Inc. ("Yieldmo") brings this patent infringement action against defendants Teads, Inc., Teads SA, and Teads SARL (together, "Teads"). Yieldmo alleges infringement of four of its patents. Each patent concerns the customization of advertisements based upon a user's real-time webpage activity, resulting in an individualized presentation of marketing content to that user.

      Pending now is Teads's motion to dismiss Yieldmo's Amended Complaint, Dkt. 31 ("AC"), for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6). It argues that Yieldmo's patents are drawn to patent-ineligible subject matter and thus are invalid under § 101 of the Patent Act, 35 U.S.C. § 101. For the following reasons, the Court agrees, finding that the patents claim as inventions nothing more than the quotidian idea of customizing advertising based on the user's webpage activity. The Court therefore grants Teads's motion to dismiss.[1]

---

[1] In light of this ruling, the Court does not have occasion to resolve Teads's separate motion to dismiss the Complaint as to two defendants, Teads SA and Teads SARL, under Rule 12(b)(5), for insufficient service of process.

## I.    Background[2]

### A.    The Parties

Yieldmo is a Delaware corporation headquartered in New Hampshire. AC ¶ 2. It claims to have "pioneered engaging digital advertising formats . . . [that] pertain to serving mobile advertisements within one or more visual elements . . . on a webpage and respond to activity on the webpage." *Id.* ¶ 25.

Teads, Inc. is a Delaware corporation headquartered in New York and a wholly owned subsidiary of Teads SARL (formerly Teads SA). *Id.* ¶ 3. Teads SA was a Luxembourg company with a principal place of business in Luxembourg. *Id.* ¶ 4. In January 2025, Teads SA was converted into Teads SARL. *Id.* ¶ 6. Teads SARL is a Luxembourg limited liability company that owns a group of consolidated subsidiary entities. *Id.* ¶¶ 5, 7. Teads SARL's subsidiaries operate an end-to-end digital advertising platform for advertisers in 32 countries. *Id.* ¶ 7.

### B.    The Patents

#### 1.    Overview of the Four Patents

The four patents at issue are U.S. Patent No. 10,832,729 (the "'729 Patent"), U.S. Patent No. 10,832,730 (the "'730 Patent"), U.S. Patent No. 11,604,918 (the "'918 Patent"), and U.S. Patent No. 12,271,683 (the "'683 Patent," and collectively, the "Patents"). *See* AC, Exs. A–D. Each was issued by the U.S. Patent and Trademark Office to Yieldmo, as follows: the '729 and '730 Patents on November 10, 2020; the '918 Patent on March 14, 2023; and the '683 Patent on April 8, 2025. *Id.* ¶¶ 19–22.

---

[2] The following facts, assumed true for purposes of resolving the motion, *see Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024), are drawn from the AC, Dkt. 31, and the four patents at issue, attached to the AC as Exhibits A–D.

2

Each patent has substantially the same specifications and is entitled, "Methods for Serving Interactive Content to a User," although the claims of the Patents are different. Each patent, in describing its function, states that it "relates generally to the field of mobile advertising and more specifically to new and useful methods for serving interactive content to a user in the field of mobile advertising." '729 Patent, at 1:25–28; '730 Patent at 1:25–28; '918 Patent at 1:27–30; '683 Patent at 1:32–35.[3]  Yieldmo's AC states that these methods "provide specific technological solutions that address technological shortcomings that were present in the field of digital advertising at the time."  AC ¶ 29.

The AC alleges that, traditionally, third parties "nested" their advertisements on websites of other companies.  *Id.* ¶ 27.  But, it states, these advertisements suffered from a lack of interactivity.  *Id.*  Because traditional nested advertisements were not capable of receiving information from webpages, they could not respond to user activity.  *Id.* ¶ 32.  Users thus had to "elect to interact" with the advertisement, usually by clicking through to an external link.  *Id.* ¶ 27.

By contrast, Yieldmo's Patents allow advertisements to interact with the user based on his or her activity on the webpage.  *Id.* ¶ 28.  Specifically, the AC pleads that the Patents link advertising content to a user's scrolling activity (known as "scroll events") to make those advertisements more engaging to users.  *Id.* ¶¶ 33–34.

The flowchart identified as Figure 3 in the '729 Patent (below) illustrates a method for delivering interactive advertising to a user.  *See* '729 Patent, Fig. 3.  It depicts an advertisement from which a subset of "frames" (*i.e.*, images from a photo or video) are selected and stored in a

---

[3] Because all four Patents share identical specifications, the Court, for ease of reference, quotes the column and line numbers from the '729 Patent, as did the parties in their briefing.

container on the webpage. *Id.* In response to the user's scrolling activity, the container then

selects and depicts different frames from the stored advertisement. *Id.*



FIG. 3

The flowchart identified as Figure 6 (below) in the same patent depicts an alternative

method for delivering interactive advertising content to a user. *See id.*, Fig. 6. In it, a loaded

video advertisement cycles forward, backward, pauses, and replays based on a user's scrolling

activity. *Id.* For example, the visual element would "cycle forward and backward through

frames in a video advertisement at a rate and in a direction corresponding to" user scroll activity.

*Id.* at 17:20–22.

4



FIG. 6

Yieldmo alleges infringement of claims 1, 6, and 9 of the '729 Patent; claims 10, 12, 14, and 15 of the '730 Patent; claims 1, 2, and 9 of the '918 Patent; and claims 1, 4, 6, and 8 of the '683 Patent. AC ¶¶ 61, 76, 91, 106.

The parties agree that claim 1 of the '729 Patent is representative of these. It reads:

> 1.    A method for serving an interactive advertisement to a user, the method comprising:
> loading an image file into an image player inserted at a set position within an electronic document rendered within a window by a mobile computing device accessed by the user, the image file comprising a

set of frames comprising advertising content distinct from content of the electronic document;

at the image player:

in response to a first scroll event within the electronic document that moves the image player within the window from an initial vertical position relative the window to a first vertical position within the window, rendering a first frame, in the set of frames, the image player;

in response to a second scroll event within the electronic document that moves the image player within the window a first distance greater than a threshold distance from the first vertical position to a second vertical position within the window: animating a transition from the first frame to a second frame, in the set of frames, within the image player during the second scroll event; and rendering the second frame, in the set of frames, within the image player; and

in response to a third scroll event within the electronic document that moves the image player within the window a second distance greater than the threshold distance, from the second vertical position to a third vertical position below the second vertical position: animating a transition from the second frame to the first frame within the image player during the third scroll event; and rendering the first frame within the image player; and calculating an engagement metric for the user interacting with the image player based on characteristics of scroll events occurring at the mobile computing device while the image player is rendered within the window.

'729 Patent, at 27:2–40 ("'729 Patent, cl. 1"). Put in simpler terms, it describes a user's scrolling

activity prompting the display of a responsive advertisement.

The other independent claims, namely claims 6 and 9 of the '729 Patent; claims 10, 12,

14, and 15 of the '730 Patent; claims 1, 2, and 9 of the '918 Patent; and claims 1, 4, 6, and 8 of

the '683 Patent, similarly describe methods for delivering interactive advertising content and

calculating user engagement.[4]

---

[4] Each of these claims is narrower than claim 1 of the '729 Patent, and largely describes methods for delivering interactive advertising content and calculating user engagement. For example, claim 10 of the '730 Patent details frame changes based on vertical ranges. *See* '730 Patent at 29:38–30:2 ("'730 Patent, cl. 10"). Claim 1 of the '918 Patent discloses advertising methods

### 2.    Use of Claim 1 of the '729 Patent as Representative

Based on its review of all the claims in the four Patents, the Court agrees with Teads that

claim 1 of the '729 Patent may be treated as representative for purposes of the § 101 inquiry. *See*

Dkt. 46 ("Defs. Br.") at 10–13.  There is no "distinctive significance of any claim limitations

other than those included" in claim 1 of the '729 Patent, *see Affinity Labs of Tex., LLC v.*

*DIRECTV, LLC*, 838 F.3d 1253, 1256 n.1 (Fed. Cir. 2016) (citation omitted), and it is clear that

the claims do not "differ in any manner that is material to the patent-eligibility inquiry," *Mortg.*

*Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 n.6 (Fed. Cir. 2016), namely

whether they are directed at a patent-ineligible subject matter or disclose an inventive concept.

When "the claims are substantially similar and linked to the same law of nature, analyzing

representative claims is proper." *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859

F.3d 1352, 1360 (Fed. Cir. 2017) (cleaned up).

Importantly, Yieldmo does not dispute that claim 1 is representative of the patent claims

at issue. Dkt. 48 ("Pl. Br.") at 4.  Ordinarily, the party asserting that one claim is representative

of a group bears the burden of making "a prima facie showing that the group of claims are

'substantially similar and linked to the same' ineligible concept." *Mobile Acuity Ltd. v. Blippar*

*Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024) (citation omitted).  Given Yieldmo's agreement, that

burden is met. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) ("Courts may

treat a claim as representative in certain situations, such as if the patentee does not present any

---

that, in response to specific scroll events, shift advertising frames from a predetermined position
to another at an established scroll rate. *See* '918 Patent at 27:8–38 ("'918 Patent, cl. 1").  And
claim 1 of the '683 Patent discloses serving interactive advertising content "via a set of servers"
upon receiving a request comprising information concerning window height. *See* '683 Patent
at 27:10–52 ("'683 Patent, cl. 1").  The other independent claims do not materially differ.

meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative."); *see also Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 702 n.1 (Fed. Cir. 2023) (same); *Realtime Tracker, Inc. v. RELX, Inc.*, 659 F. Supp. 3d 384, 395 (S.D.N.Y. 2023) (same), *aff'd*, No. 2023-1756, 2024 WL 4746162 (Fed. Cir. Nov. 12, 2024). The Court accordingly treats '729 Patent's claim 1 as representative.[5]

## C.    Procedural History

On January 24, 2025, Yieldmo filed the Complaint. Dkt. 1. On March 21, 2025, Teads moved to dismiss. Dkts. 27–29. On March 24, 2025, the Court issued an order directing Yieldmo to either amend the Complaint or oppose the motion. Dkt. 30.

On April 11, 2025, Yieldmo filed the AC. Dkt. 31. On May 9, 2025, after an extension, Teads filed a motion to dismiss, Dkt. 45, a memorandum in support, Dkt. 46, and a declaration with an annexed exhibit, Dkt. 47 ("Huet Decl."). On May 20, 2025, Yieldmo opposed. Dkt. 48. On May 27, 2025, Teads replied, Dkt. 50 ("Defs. Reply"), and filed a supplemental declaration, Dkt. 49 ("Huet Supp. Decl.").

---

[5] Notwithstanding its agreement as to representativeness, Yieldmo argues that Teads's bid "to adjudicate all claims in all patents is improper," because there is not a case or controversy as to each claim in each patent. Pl. Br. at 4–5 (citing *Ameranth, Inc. v. Domino's Pizza, LLC*, 792 F. App'x 780, 785 (Fed. Cir. 2019)). That is incorrect. Courts may adjudicate multiple like patent claims while treating one as representative. Such treatment is particularly warranted when the plaintiff does not identify any claim "it believe[s] would not be fairly represented" by the chosen claim. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (upholding treatment of claim as representative of others and dismissing plaintiff's belated argument that each claim required an individualized assessment); *see also Quantum Stream Inc. v. Charter Commc'ns, Inc.*, 309 F. Supp. 3d 171, 183–86 (S.D.N.Y. 2018) (adjudicating three patents' claims despite treating one claim as representative).

## II.    Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (citation omitted). However, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[R]ather, the complaint's [f]actual allegations must be enough to raise a right to relief above the speculative level, *i.e.*, enough to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 570) (citation omitted) (emphasis in *Arista Records*). A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

## III.    Discussion

In moving to dismiss, Teads argues that the Patents are invalid under § 101 of the Patent Act because their claims are drawn to patent-ineligible subject matter. Teads is correct. Under any reasonable construction, the four Patents at issue claim as their invention an abstract idea:

9

customizing advertising content based upon a user's interaction with a webpage. They are thus invalid under § 101.

A. **Section 101 of the Patent Act**

"Whether a claim is drawn to patent-eligible subject matter under § 101 is a threshold inquiry[.]" *In re Bilski*, 545 F.3d 943, 950 (Fed. Cir. 2008) ("*Bilski I*"), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010) ("*Bilski II*"). When a claim is not drawn to patent-eligible subject matter, it "must be rejected even if it meets all of the other legal requirements of patentability." *Id.* Whether a claim is drawn to patent-eligible subject matter presents a "pure question of law." *Lumen View Tech. v. Findthebest.com, Inc.*, 984 F. Supp. 2d 189, 204 (S.D.N.Y. 2013); *see also Bilski I*, 545 F.3d at 951 (determination of a patent's validity under § 101 is an "issue of law"). The Patent Act provides that all patents are "presumed valid," and "[e]ach claim of a patent (whether independent, dependent, or multiple dependent form) [is] presumed valid independently of the validity of other claims." 35 U.S.C. § 282(a). In light of this presumption of validity, "[t]he party challenging the validity of a patent bears the burden of proving invalidity by clear and convincing evidence." *Lumen View*, 984 F. Supp. 2d at 194; *see also* 35 U.S.C. § 282(a) ("The burden of establishing invalidity of a patent or any claim thereof . . . rest[s] on the party asserting such invalidity.").

Section 101 of the Patent Act sets out the categories of inventions that are eligible for patent protection. It provides:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. § 101.

The four categories of patent-eligible subject matter cited in § 101—processes, machines, manufactures, and compositions of matter—are, however, subject to implicit exceptions. The Supreme Court has held there are "three specific exceptions to § 101's broad patent-eligibility principles: 'laws of nature, physical phenomena, and abstract ideas.'" *Bilski II*, 561 U.S. at 601 (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980)). Although these exceptions are not recited in the text of § 101, they follow, the Court has explained, from the foundational precept that "a patentable process must be 'new and useful.'" *Id.* at 601–02. The Court has construed § 101 and its predecessors in light of these implicit exceptions for more than 150 years. It addressed them most recently in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 214–16 (2014).

In *Alice*, the Court explained that excluding "laws of nature, physical phenomena, and abstract ideas" from protection under § 101 derives from the concern that innovative work could otherwise be deterred. *Id.* at 216. "Laws of nature, natural phenomena, and abstract ideas are 'the basic tools of scientific and technological work,'" *id.* (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)), and "'monopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it,' thereby thwarting the primary object of the patent laws," *id.* (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012)). As the Court has memorably illustrated the point: "[A] new mineral discovered in the earth or a new plant found in the wild is not patentable subject matter. Likewise, Einstein could not patent his celebrated law that $E=mc^2$; nor could Newton have patented the law of gravity. Such discoveries are 'manifestations of . . . nature, free to all men and reserved exclusively to none.'" *Chakrabarty*, 447 U.S. at 309 (quoting *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948)).

At the same time, the Supreme Court has recognized, "too broad an interpretation of this exclusionary principle could eviscerate patent law. For all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo*, 566 U.S. at 71. As such, "'[a]pplications' of such concepts 'to a new and useful end' . . . remain eligible for patent protection." *Alice*, 573 U.S. at 217 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)). When applying the § 101 exceptions, a court thus "must distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more . . . thereby transforming them into a patent-eligible invention." *Id.* (citation omitted).

To guide the § 101 inquiry into whether a patent is drawn from patent-eligible subject matter, the Supreme Court has established a two-step framework, sometimes referred to as the *Mayo/Alice* inquiry.

First, a court must determine "whether the claims at issue are directed to one of [the] patent-ineligible concepts." *Alice*, 573 U.S. at 217 (citing *Mayo*, 566 U.S. at 77–78). This is a "meaningful" inquiry that contemplates that "a substantial class of claims are *not* directed to a patent-ineligible concept." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). This "'directed to' inquiry . . . applies a stage-one filter to claims, considered in light of the specification, based on whether 'their character as a whole is directed to excluded subject matter.'" *Id.* (quoting *Internet Pats. Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)); *see also Internet Pats. Corp.*, 790 F.3d at 1348 (step one of *Mayo/Alice* inquiry begins by "ascertaining the basic character of the subject matter"). Claims that "'purport to improve the functioning of the computer,'" or those that "'improve an existing technological process,' might not succumb to the abstract idea exception." *Enfish*, 822 F.3d at 1335 (quoting

12

*Alice*, 573 U.S. at 225) (citation omitted).  As such, when claims focus on computer capabilities, whether they are directed at patent-eligible subject matter is evaluated by "whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id.* at 1335–36.

Relevant to the first step inquiry, "an abstract idea does not become non-abstract by limiting the invention to a particular field of use or technological environment, such as the Internet." *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015) (citing *Alice*, 573 U.S. at 222–23).  Courts have recognized numerous categories of abstract ideas, such as "methods of organizing human activity," *see id.* at 1367, or "a fundamental economic practice long prevalent in our system of commerce," *Alice*, 573 U.S. at 219.  The Supreme Court has not defined a specific rule for determining what constitutes an abstract idea within the meaning of step one of the *Mayo/Alice* inquiry.  Instead, the Court (and the Federal Circuit) "have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1334; *see also Intell. Ventures*, 792 F.3d at 1367 ("The abstract idea here is not meaningfully different from the ideas found to be abstract in other cases before the Supreme Court and [the Federal Circuit].").  In addition, courts have often held processes that can be accomplished mentally or within the human mind as drawing upon abstract ideas.  That is because the "application of only human intelligence to the solution of practical problems is no more than a claim to a fundamental principle." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371–72 (Fed. Cir. 2011) (quoting *Bilski I*, 545 F.3d at 965) (citation omitted).

If the first step of the inquiry reveals that the patent is directed to a patent-ineligible concept, the Court turns to the next step. It directs a court to evaluate whether the patent, despite its patent-ineligible subject matter, nevertheless claims a patent-eligible application. As the Supreme Court framed that inquiry in *Alice*, "we then ask, 'what else is there in the claims before us?'" by considering "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 77–78). Put differently, this second step of the analysis is a search for an "'inventive concept,'" meaning "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.'" *Id.* (quoting *Mayo*, 566 U.S. at 72–73).

Addressing this step in the context of computers, the Federal Circuit has emphasized: "A simple instruction to apply an abstract idea on a computer is not enough." *Intell. Ventures*, 792 F.3d at 1367 (citing *Alice*, 573 U.S. at 222–23). And, it has held, a patent does not constitute a sufficient inventive concept by "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer." *Id.* An inventive concept is also unlikely to exist when the processes or calculations claimed in a patent could be accomplished within the human mind or through mental processes, or by "using pencil and paper," or even when assisted with a simple device or accomplished in real time with variable inputs being affected. *See id.* at 1368–69. Similarly, "to salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations and computations could not." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012).

14

### B.    Applying Section 101 to the Patents

Teads argues that the Patents here fail at both steps of the *Mayo/Alice* inquiry.  At step one, it argues, the Patents are ineligible under § 101 because they are drawn to the abstract idea of serving responsive, digital advertisements.  Defs. Br. at 1, 13–18.  And, it argues, the Patents are not saved at step two, as their claims do not supply an inventive concept.  *Id.* at 18–20. Yieldmo defends the Patents at step one, as "improvement[s] on the prior art" of electronic advertising, in that they set out steps for generating advertisements responsive to user activity. *See* Pl. Br. at 9–10.  And it argues, even if the Patents were directed to patent-ineligible concepts, they are saved at step two, because they chart inventive steps towards providing users with interactive marketing material.  *Id.* at 16–20.  On both points, Teads has the better argument.

### 1.    *Mayo/Alice* Step One: Abstract Idea

The Court first inquires whether the claims in the four Patents are directed toward a patent-ineligible concept.

Guided by Supreme Court and Federal Circuit precedent, the Court finds that the claims are directed to an ineligible abstract idea: specifically, advertising responsive to consumer activity.  At a general level, the Patents each claim a method for serving interactive advertisements to a user.  For example, claim 1 of the '729 Patent describes utilizing a user's ordinary up-down scrolling to display images in sequential order, with downward scrolling triggering one sequence of images, and upward scrolling triggering them in reverse.  *See, e.g.*, '729 Patent at 27:2–16.  And the claims in the other Patents, such as claim 14 of the '730 Patent and claim 2 of the '918 Patent, recite variations of interactive advertisements, while adding related features such as tracking user engagement and calculating advertisement efficacy.

Important to the *Mayo/Alice* analysis, the Patents do not claim any improvements of digital hardware or software programming. Instead they claim a concept. Yieldmo all but acknowledges this. It describes its Patents as entailing concepts to be "implemented by software," and touts them as claiming a "new kind of image player functionality that did not previously exist." Pl. Br. at 5–6. In the end, however, the concept that Yieldmo's Patents describe is that of tailoring advertisements to user activity. That high-level concept is not meaningfully concretized in the Patents, notwithstanding the Patents' inclusion of several high-level flow charts illustrating the scrolling-based advertising selection process. As such, that concept is too abstract to survive *Mayo/Alice* step one.

That becomes clear when the concept embodied in the Patents is compared with the concepts at issue in reported cases (including from the Federal Circuit) applying *Alice* to other claimed inventions. Indeed, the Supreme Court has repeatedly held invalid Patents like these, relating to well-established business practices and "method[s] for organizing human activity." *Alice*, 573 U.S. at 219 (invalidating patent describing concept of risk hedging, which is a "fundamental economic practice long prevalent in our system of commerce"); *see Mayo*, 566 U.S. at 79 (invalidating patent describing method to determine metabolite levels, which were already "well known in the art," and amounted to "nothing significantly more than an instruction to doctors to apply the applicable laws"); *see also Repifi Vendor Logistics, Inc. v. IntelliCentrics, Inc.*, No. 2021-1906, 2022 WL 794981, at *2 (Fed. Cir. Mar. 15, 2022); *Realtime Tracker*, 659 F. Supp. 3d at 401–02; *AuthWallet, LLC v. Block, Inc.*, 602 F. Supp. 3d 620, 631 (S.D.N.Y. 2022), *aff'd sub nom. In re AuthWallet, LLC*, No. 2022-1842, 2023 WL 3330298 (Fed. Cir. May 10, 2023); *DietGoal Innovations LLC v. Bravo Media LLC*, 33 F. Supp. 3d 271, 284 (S.D.N.Y. 2014), *aff'd*, 599 F. App'x 956 (Fed. Cir. 2015).

For this reason, multiple patents which, like these, capture concepts in the advertising

space, have been held to be directed at ineligible abstract ideas. *See, e.g., Broadband iTV, Inc. v.*

*Amazon.com, Inc.*, 113 F.4th 1359, 1371 (Fed. Cir. 2024) ("[C]laim 1 is directed to a type of

'targeted advertising,' which we have repeatedly found abstract."), *cert. denied*, 145 S. Ct. 1924

(2025); *In re Morsa*, 809 F. App'x 913, 917 (Fed. Cir. 2020) ("[T]he claim recites . . . targeted

advertising . . . which [is an] abstract idea[] relating to customizing information based on the user

and matching them to the advertiser."); *Customedia Techs., LLC v. Dish Network Corp.*, 951

F.3d 1359, 1365 (Fed. Cir. 2020) ("[T]he claimed invention is at most an improvement to the

abstract concept of targeted advertising wherein a computer is merely used as a tool."); *Bridge &*

*Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 893 (Fed. Cir. 2019) (patent ineligible

for protection because it focused on the abstract field of targeted advertising); *Guvera IP Pty Ltd.*

*v. Spotify, Inc.*, No. 21 Civ. 4544, 2022 WL 4537999, at *7 (S.D.N.Y. Sept. 28, 2022)

("[C]ontent matching and targeted advertising are abstract ideas."), *aff'd sub nom. Guvera IP Pty*

*Ltd. v. Spotify USA Inc.*, No. 2023-1493, 2024 WL 1433505 (Fed. Cir. Apr. 3, 2024); *Quantum*

*Stream Inc.*, 309 F. Supp. 3d at 184 ("[T]he Court concludes that the patents are patent-ineligible

because they are directed at the abstract idea of custom advertising and lack an inventive

concept[.]").

The Federal Circuit's recent decision in *Impact Engine, Inc. v. Google LLC*, No. 2022-

2291, 2024 WL 3287126 (Fed. Cir. July 3, 2024), *cert. denied*, 145 S. Ct. 1314 (2025), is, in fact,

strikingly apposite. The patents at issue there described a method for dynamically generating

online communications, including banner advertisements, in response to user preferences or

metadata. *Id.* at *1–2. The Circuit held that such an activity was directed towards an "abstract

idea of processing information—turning user-provided input into user-tailored output—and not

any improved concrete tools or methods by which that processing functionality is achieved." *Id.*
at *6 (citing *FairWarning IP, LLC v. Iatric Systems, Inc.*, 839 F.3d 1089, 1095 (Fed. Cir. 2016)).
And, at *Alice/Mayo* step two, it held that the claims did not specify an inventive concept, such as
particular improvements to computer components or functionality. *Id.* at *7. "At best," the
Circuit explained, the claims recite "unordered arrangements of generic functional components
that use generic computer-related components as tools in a routine and conventional sense to
practice the above-defined abstract information-processing idea," including interactive
advertisements. *Id.* (cleaned up).

So, too, here. As in *Impact Engine*, the claims at issue are directed to the abstract idea of
processing information in response to user activity. They do not identify any defined tool or
method for accomplishing this objective. They ultimately reduce to describing the concept of
exchanging and processing user information. That concept, as *Impact Engine* teaches, is fatally
abstract.

Indeed, this Court, in a decision rendered seven years before *Impact Engine*, reached the
same result in a different, but noticeably similar, case. The Court there applied *Alice* to
invalidate three patents related to the pairing of "secondary" advertising content based upon a
user's real-time selection of "primary" content, so as to result in a customized presentation of
advertising to the user. *See Quantum Stream*, 309 F. Supp. 3d at 184–86. In that decision, the
Court synthesized the case law bearing on patent ineligible tailored customer advertising as
follows:

> [I]n *Intellectual Ventures* . . . , the Federal Circuit held that a patent that "generally
> relates to customizing web page content as a function of navigation history and
> information known about the user," was drawn to an ineligible abstract idea. 792
> F.3d at 1369. The Federal Circuit noted that tailoring content based upon
> "information known about the user" is "'a fundamental . . . practice long prevalent
> in our system.'" *Id.* (quoting *Alice*, 573 U.S. at 219). It observed, as an example,

that "[t]here is no dispute that newspaper inserts had often been tailored based on information known about the customer—for example, a newspaper might advertise based on the customer's location. Providing this minimal tailoring—e.g., providing different newspaper inserts based upon the location of the individual—is an abstract idea." *Id.* The Federal Circuit also found that the tailoring of content based upon a user's navigation data, such as based upon the time of day of viewing, "is also an abstract, overly broad concept long-practiced in our society. There can be no doubt that television commercials for decades tailored advertisements based on the time of day during which the advertisement was viewed." *Id.*

Other cases have found similar processes involving the bare customization of content, including the customized presentation of content, to embody abstract ideas and thus to be unpatentable. For example, the Federal Circuit has held that a "customized user interface" in which "a user may elect to have a customized interface such as a radio dial, a playlist, or targeted advertising based on demographic information provided by the user" is an unpatentable abstract idea. *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1271 (Fed. Cir. 2016). This was so even though the patent at issue recited claim terms like a "network based media management system" and a "graphical user interface" as part of the customized interface. As the Federal Circuit noted, those components "are simply generic descriptions of well-known computer components" that "'merely provide a generic environment in which to carry out the abstract idea.'" *Id.* at 1270 (quoting *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016)). Instead, the Federal Circuit concluded, "[l]ike the basic concept of tailoring content to a user, as in *Intellectual Ventures*[,] the basic concept of customizing a user interface is an abstract idea." *Id.* at 1271.

This Court, too, in fact, has held that customizing content based on user preferences or other data is an abstract idea and is therefore, without more, patent-ineligible. In one of the first decisions applying *Alice*, this Court held that a meal planning process that could be used to design customized meals based upon the user's preferences was drawn to an abstract idea and was thus unpatentable. *DietGoal Innovations LLC v. Bravo Media LLC*, 33 F. Supp. 3d 271, 284 (S.D.N.Y. 2014), *aff'd*, 599 F. App'x 956 (Fed. Cir. 2015). The patent at issue described "a computerized method of selecting meals that align with the user's individual preferences and nutritional goals (for example, by planning out dinners for the week that accord with a low-calorie diet) and calculating the dietary impact of the addition or subtraction of certain foods (for example, by determining how many calories you will save by swapping out French fries for broccoli)." But that process, the Court held, merely implemented the patent-ineligible and age-old abstract idea of a person's own customized meal planning. *Id.*

As another example, in *Lumen View*, Judge Cote concluded that the patent there for "computer assisted matchmaking" was drawn to a patent-ineligible abstract idea. *Lumen View*, 984 F. Supp. 2d at 191. Much like matching the attributes of secondary advertising content to the attributes of vacancies in primary

content based upon a user's selection of primary content, or based upon other attributes about the user, the patent in *Lumen View* contemplated "having each party disclose desired attributes, and intensity of preferences with respect to those attributes, and then having a computer match employees and employers whose desired attributes and intensities of preferences mutually align." *Id.* at 192. This, Judge Cote held, was an abstract idea that could not be patented. *Id.* at 205.

*Quantum Stream*, 309 F. Supp. 3d at 184–86.

Yieldmo here asserts patent protection of over similarly abstract and broad concepts. That its Patents use industry jargon—*e.g.*, "image player," "scroll event," and "engagement metric"—to capture these concepts does not alter this reality.

The Court's recent decision in *eChanging Barcode, LLC v. MLB Advanced Media L.P.*, supplies a useful contrast. No. 24 Civ. 2930 (PAE), 2025 WL 1548814 (S.D.N.Y. May 30, 2025). The Court there held that the patent at issue, which involved dynamic barcoding technology aimed at combatting fraud in the event ticketing industry, did not capture a fatally abstract concept, but instead recited specific steps in detail. As the Court summarized these, they included (1) "associat[ing] the device with a unique identifier, user, and access restrictions"; (2) "obtain[ing] visual symbol information to generate machine-discernable images for access credentials"; and (3) "initiat[ing] the wireless transition of visual symbol information to the device within specified time intervals." *Id.* at *7 (citation omitted). Here, by contrast, Claim 1 of the '729 Patent describes, at the proverbial 30,000-foot level, keying advertising content to scrolling events. *See, e.g.*, '729 Patent at 27:10–17. Yieldmo alternatively defends its Patents as a means of improving computer operations. Pl. Br. at 7. But the high-level arrangements described in Yieldmo's Patents do not address computer functionality. And the Supreme Court and Federal Circuit have pointedly disdained claims of patentability based on the invocation of a computer as the tool to achieve an end. *See Alice*, 573 U.S. at 223–24 ("Given the ubiquity of computers, wholly generic computer implementation is not generally the sort of additional

feature that provides any practical assurance that the process is more than a drafting effort designed to monopolize the abstract idea itself." (cleaned up)); *Customedia Techs.*, 951 F.3d at 1365 ("[T]o be directed to a patent-eligible improvement to computer functionality, the claims must be directed to an improvement to the functionality of the computer or network platform itself."). The Patents here, fairly described, do not chart new paths in computer functionality. Rather, the Patents and the flowcharts that they embed merely "describe the familiar and unremarkable process of matching secondary advertising content with primary content so as to provide a unified (tailored) presentation to the particular user." *Quantum Stream*, 309 F. Supp. 3d at 186. They do not describe the kind of "discover[y]" that § 101 was designed to protect. *Parker v. Flook*, 437 U.S. 584, 593 (1978).

Yieldmo's bid is, finally, in conflict with a line of precedent holding that "steps of obtaining, manipulating, and displaying data, particularly when claimed at a high level of generality, are abstract concepts." *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1378 (Fed. Cir. 2024). Claims which merely "consist solely of result-orientated, functional language and omit any specific requirements as to how these steps of information manipulation are performed" do not rise beyond the level of abstraction necessary for patent protection. *Mobile Acuity Ltd.*, 110 F.4th at 1292–93; *see Trading Techs. Int'l, Inc. v. CQG, INC.*, 675 F. App'x 1001, 1005 (Fed. Cir. 2017) ("[I]neligible claims generally lack steps or limitations specific to solution of a problem, or improvement in the functioning of technology.").

The Court therefore holds that Yieldmo's four Patents are directed towards an ineligible abstract idea. Like the patents invalidated in *Impact Engine*, *Intellectual Ventures*, *Affinity Labs of Tex.*, *DietGoal Innovations*, *Lumen View*, and *Quantum Stream*, they therefore fail at *Mayo/Alice* step 1.

21

## 2.     *Mayo/Alice* Step Two: Inventive Concept

At step two of the *Mayo/Alice* inquiry, the Court inquires whether, notwithstanding that the patent is drawn to a patent-ineligible concept, the claims in it contain an "inventive concept" that transforms an otherwise patent-ineligible abstract idea into a patent-eligible application of that idea. *See Alice*, 573 U.S. at 221. The answer here is no.

In seeking to salvage the Patents at this step, Yieldmo argues that the claims in them set out specific methods to customize advertisements based on scrolling activity or to collect engagement data. Its AC alleges that its Patents provide for interactive advertisements and alleges this is superior to using conventional digital advertisements, which do not respond to user activity. AC ¶¶ 27–28. On this basis, Yieldmo argues, the Patents embody "unconventional improvements" over "conventional," "limited," "non-interactive," advertisements. Pl. Br. at 18–20. It argues that its Patents add "more engaging advertisement[s]" and the "advantageous functionality" of "being able to track viewer interactions" based on their activity. *Id.* at 19.

These arguments do not salvage Yieldmo's Patents. As the Federal Circuit has held, the routine application of computer components to accomplish an end is not new or inventive. *See Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1374 (Fed. Cir. 2017); *accord Realtime Tracker*, 659 F. Supp. 3d at 406. Here, notwithstanding Yieldmo's touting, the Patents do not map out steps that, for a computer, are more than conventional, and that is fatal to Yieldmo's bid. *See In re Smith*, 815 F.3d 816, 819 (Fed. Cir. 2016).

Claim 1 of the '729 Patent—which the parties, again, agree is representative—merely recites steps that computers commonly perform. These include "loading an image file into an image player," '729 Patent at 27:4, "in response to a first scroll event," rendering specific images, *id.* at 27:11, and "in response to a second scroll event," changing advertisement images,

*id.* at 27:18. But "reciting no more than generic computer elements performing generic computer tasks does not make an abstract idea patent-eligible." *Intell. Ventures*, 792 F.3d at 1368. And "invocations of computers and networks that are not even arguably inventive are insufficient to pass the test of an inventive concept in the application of an abstract idea." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016) (citation omitted). The same analysis applies to the fact that the Patents propose to use "engagement metrics" to guide the selection of advertisements, a feature to which Yieldmo also points as a hallmark of the Patents' novelty and innovation. Pl. Br. at 19. That contention notwithstanding, computers routinely capture usage data and adapt based on it. And "[a]dding routine additional steps . . . does not transform an otherwise abstract idea into patent-eligible subject matter." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014).

The claims added by the other Patents are of similarly quotidian character. For example, claim 2 of the '918 Patent describes selecting and displaying advertisement images in a specific order. '918 Patent at 27:39–46. But that describes, and at a generic level to boot, a process (the selection of information) that is quintessentially abstract and ineligible for patent protection, as it can be accomplished through ordinary mental processes. *See Elec. Power Grp.*, 830 F.3d at 1355 ("[M]erely selecting information, by content or source, for collection, analysis, and display does nothing significant to differentiate a process from ordinary mental processes, whose implicit exclusion from § 101 undergirds the information-based category of abstract ideas."). The same applies to claim 1 of the '683 Patent, which similarly describes providing interactive advertisement content based, in part, on the height of the user's viewing window. '683 Patent, Col. 27:10–52.

Yieldmo next argues that its Patents solve a problem unique to the Internet. *See* Pl. Br. at 20. It invokes *DDR Holdings, LLC v. Hotels.com, L.P.*, a case in which the Federal Circuit held that technology solving a challenge particular to the Internet—there, keeping users on a website after they click on an advertisement—is not directed to an abstract idea and thus is patent-eligible. *See* 773 F.3d 1245, 1257–59 (Fed. Cir. 2014). The Circuit, however, cautioned there that "not all claims purporting to address Internet-centric challenges are eligible for patent," and that that doctrine does not salvage a patent whose claims merely recite the abstract concepts of offering advertising content or providing additional steps such as requiring user engagement. *Id.* at 1258. Yieldmo's Patents fail that standard. Unlike the *DDR Holdings* patent, which "amount[ed] to an inventive concept for resolving [a] particular Internet-centric problem," *id.* at 1259, Yieldmo's Patents are merely the latest in a long line that propose to effectuate customized advertising. That undertaking does not present an Internet-specific challenge. And as noted, customizing user advertising has been widely held not to disclose an inventive concept. *See, e.g.*, *Customedia Techs.*, 951 F.3d at 1362–63; *Intell. Ventures*, 792 F.3d at 1369; *Quantum Stream*, 309 F. Supp. 3d at 186–88. As this Court put the point in *Quantum Stream*, involving a similar application, "the straightforward implementation of the benefits of an abstract idea does not itself give rise to an inventive concept." 309 F. Supp. 3d at 187.

The Court thus holds that Yieldmo's Patents lack an inventive concept that could sustain them at step two. *See, e.g.*, *Broadband iTV*, 113 F.4th at 1371–73 (interactive advertising displays based on viewer data are abstract and lack an inventive concept); *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1365–66 (Fed. Cir. 2021) (same as to targeted advertising that addresses technological barriers); *Quantum Stream*, 309 F. Supp. 3d at 188 (similar).

## CONCLUSION

For the foregoing reasons, the Court holds that the Patents at issue are drawn to patent-ineligible subject matter, and therefore grants Teads's motion to dismiss for failure to state a claim.[6] The Clerk of Court is respectfully directed to terminate all pending motions, and to close this case.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: July 21, 2025
New York, New York

---

[6] In light of its finding that the Patents are invalid, the Court does not have occasion to address the preemption issues which the parties briefed. *See* Pl. Br. at 10–11; Defs. Reply at 3–4; *WhitServe LLC v. Dropbox, Inc.*, 854 F. App'x 367, 370 (Fed. Cir. 2021) (preemption "is not a separate and independent test under *Alice*" (citation omitted)).